

**SIGNED this 22 day of December, 2008.**

_____
                  **John C. Cook**
         **UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| HOWARD TAKASHI YOSHIDA | ) | NO. 08-11692 |
| DEBORAH CAROL YOSHIDA | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| BOBBIE JEAN SCHWEIBISH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. 08-1065 |
| | ) | |
| HOWARD TAKASHI YOSHIDA | ) | |
| DEBORAH CAROL YOSHIDA | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

The plaintiff seeks a judgment against the defendants determining that the defendants'

debt to the plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). The

proceeding is before the court on a motion by the plaintiff, Bobbie Jean Schweibish, for summary judgment. The defendants are Ms. Schweibish's daughter, Deborah Yoshida and her husband, Howard Yoshida, who have in turn filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) made applicable to adversary proceedings pursuant to Fed. R. Bank. P. 7012(b). For the reasons that follow, the plaintiff's motion for summary judgment will be denied and the defendant's motion to dismiss will be granted.

**A.  Motion For Summary Judgment**

The plaintiff has a judgment from the Chancery Court of Hamilton County, Tennessee, for $149,104.99 in compensatory damages and $5,000.00 for punitive damages against the defendants. She seeks summary judgment only as to the count in her complaint alleging nondischargeability under 11 U.S.C. § 523(a)(2)(A) concerning money or property obtained by "false pretenses, a false representation, or actual fraud . . . ." The plaintiff relies on the judgment and a memorandum opinion by the chancellor, which is attached to the complaint as an exhibit, along with the principle of collateral estoppel to support her motion for summary judgment.

The facts in the state case, as found by the chancellor, were that the plaintiff and the defendants were living together as a family when the defendants, using undue influence, got the plaintiff to put up her home as collateral for two substantial bank loans, the proceeds of which the defendants then used solely for their own purposes and not for any benefit to the plaintiff. In his memorandum, the chancellor stated that the "[p]laintiff's claims are based upon the doctrine of undue influence and the presumption of fraud that results when a person occupies a position of special trust and confidence towards the party from whom a gift is obtained." Chancellor's

Memorandum at 8. The chancellor noted that under Tennessee state law, "[t]he doctrine of undue influence arises when one party is in a position to exercise undue influence over the mind and will of another due to the existence of a confidential relationship," and that "abuse of [that] confidence and the exercise of dominion and control must be shown through proof that the person's free will and agency is overcome." *Id.* The chancellor futher noted that a grantor who seeks to set aside a transation based on undue influence must prove (1) the existence of a confidential relationship between the parties (which may be a family relationship) wherein the grantee was the dominant party and (2) a transaction among them that conferred a benefit on the grantee. *Id.* Once a plaintiff has proven these two elements, the burden shifts under Tennessee law to the grantees to "prove by clear and convincing evidence that the transaction was fair and not the product of undue influence." *Id.* at 9. The chancellor concluded that the elements of a transaction based on undue influence existed and that the defendants "submitted no proof that any benefit was conferred on plaintiff in the subject transactions or that the transactions were fair to the plaintiff." *Id.* at 12. There is no finding of a fraud based on any misrepresentation, indeed no mention of any representation or misrepresentation, and no discussion of any intentional deception. From the four corners of the memorandum, it appears that the chancellor found only dominion and control by the defendants over the plaintiff and the fact that the transaction benefitted only the defendants – the elements of undue influence.

The plaintiff's motion for summary judgment is limited to the argument that the debt in question is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was obtained by "false pretenses, a false representation, or actual fraud." While the chancellor awarded damages "for fraud and undue influence," Judgment at 1, there is nothing in his incorporated memorandum

from which a misrepresentation, the usual basis of fraud, can be deduced or derived. In *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277 (6th Cir. 1998), the Sixth Circuit held:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Id.* at 280-81.

Although *Rembert* seems to say that a material misrepresentation is a requirement to bar a discharge under § 523(a)(2)(A), the Bankruptcy Appellate Panel of the Sixth Circuit decided to adopt the wider definition of the term "actual fraud" in § 523(a)(2)(A) that was used by the Seventh Circuit in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000). Thus, in *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873 (B.A.P. 6th Cir. 2001), the panel held that a definition of "actual fraud" involving a misrepresentation "is not required, as actual fraud encompasses 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Id.* at 877 (quoting *McClellan*, 217 F.3d at 893). The panel also quoted with approval from *McClellan* as follows:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*Id.* (quoting *McClellan*, 217 F.3d at 893).

Even under the *Vitanovich* standard, however, this court cannot discern from the chancellor's memorandum any indication that he found "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." There is no mention of any "false suggestions" or "the suppression of truth," and this court is not permitted to imagine them. Indeed, all the chancellor seems to have found is that the plaintiff and the defendants were family and that the defendants convinced the plaintiff to engage in a transaction that benefitted only themselves. This transaction may have been unwise from the plaintiff's point of view unless she intended to confer a benefit on the defendants, but there is no finding in the chancellor's writing of any misrepresentation or particular trickery by the defendants. Since "exceptions to discharge are to be strictly construed against the creditor," *In re Rembert*, 141 F.3d at 281, this court cannot conclude that the plaintiff has established nondischargeability of the debt in question under 11 U.S.C. § 523(a)(2)(A).

The plaintiff also argues that her debt cannot be discharged under § 523(a)(2)(A) because the chancery court found the defendants to be guilty of reckless conduct towards the plaintiff for which it awarded punitive damages of $5,000.00. In *Phillips v. Coman (In re Phillips)*, 804 F.2d 930 (6th Cir. 1986), the Sixth Circuit held that a reckless *representation* may amount to a misrepresentation for purposes of § 523(a)(2)(A). In that case, a borrower misrepresented the amount and quality of the collateral he was giving as security for a loan by showing a deed that recited more acreage than he actually had. The borrower also failed to inform the lender of a pre-

existing mortgage on some of the land. The central issue in the case was whether the lender reasonably relied on the false representations. The Sixth Circuit held:

> On these facts, it can be inferred that the Phillips knowingly made a materially false representation. At a minimum this misrepresentation was made with gross recklessness as to its truth and with the knowledge that it would induce the Comans to make the loan; this fulfills the necessary element of intent to deceive.

*Id.* at 933-34. This passage shows that what the court was discussing was its view that a recklessly made *representation* may deceive and may therefore constitute fraud or a false representation within the meaning of § 523(a)(2)(A). The case does not say that reckless *conduct* necessarily amounts to fraud or misrepresentation. That would be absurd.

From his ruling, it is clear that the chancellor awarded punitive damages for reckless conduct, not reckless misrepresentation. First, he noted that punitive damages could be awarded for reckless conduct and he defined reckless conduct under Tennessee law:

> "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances."

Chancellor's Memorandum at 12 (quoting *Hodges v. S.C. Toof & Company*, 833 S.W.2d 896, 901 (Tenn. 1992). The chancellor then specifically found that "the Yoshidas demonstrated no regard or concern about the effect of the transactions on the plaintiff, and used her property as if it were theirs alone. The Court finds *that* clear and convincing proof of reckless conduct justifying punitive damages." *Id.* (emphasis added). Thus the chancellor found, not that any misrepresentation of any kind was made, but that the defendants' lack of regard or concern about the effect of the mortgages on the plaintiff's financial position was reckless *conduct* justifying punitive damages. If the conduct he found to be reckless had been some kind of representation, then *In re*

-6-

*Phillips* might apply, but that is not the fact. It seems, instead, that the chancellor meant to penalize the defendants for their selfish disregard of their family member's best interests.

**B.  Motion To Dismiss**

Turning now to the motion to dismiss filed by the defendants in this case, the court observes that the Supreme Court has recently clarified the rules applicable to motions to dismiss for failure to state a claim for which relief may be granted and now requires something more than a conclusory recitation of statutory standards.  In *Bell Altantic Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1964-64 (2007), the Court held that

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more that labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

It went on to require that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.* at 1965.  It "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson . . . ,*" *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F. 3d 545, 548 (6th Cir. 2007), and went on to conclude:

> Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.

127 S. Ct. at 1974.

Under this standard, the plaintiff's complaint must be dismissed.  Counts 6 and 7 of the complaint allege in purely conclusory fashion that the defendants "committed fraud or defalca-

tion" and "willful and malicious injury" respectively. No facts whatever are recited and there is no attempt to show that the bare allegations are in any way plausible rather than merely conceivable. No specific references are made to the chancery court memorandum in respect of either of these counts, and there is no explanation in the complaint of how they might be derived from it.

As for count 5, it does refer to the chancellor's memorandum but then merely concludes that defendants "obtained money and property . . .by false pretenses, false representations and actual fraud." This is nothing more than the labeling and "formulaic recitations" condemned by the Supreme Court in *Bell Atlantic*. Even if this court were to consider the chancellor's memorandum as an integral part of the complaint in this case, nothing would change. As explained in Part A of this memorandum, the chancellor found only undue influence, and none of the facts he relied on show any fraud.

Pleadings are designed to alert the opposing party to the charges it must meet. While explanatory attachments to pleadings are certainly permitted, the opposing party is not required to wade through extraneous materials in order to guess how they might support a plaintiff's bare bones complaint.

> Rule 8(a) (2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it").

*Bell Atlantic*, 550 U.S. 544, 127 S. Ct. at 1965 n. 3. This complaint makes no "showing" of the plausibility of the plaintiff's entitlement to relief and so it will be dismissed.

An appropriate order will enter denying the plaintiff's motion for summary judgment and granting the defendants' motion to dismiss.

###